IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2014

## DEVARON TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-01054      James M. Lammey, Jr., Judge**

_____

**No. W2013-01588-CCA-R3-PC  - Filed September 16, 2014**

_____

The petitioner, Devaron Taylor, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of counsel.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Constance Wooden Alexander, Memphis, Tennessee, for the appellant, Devaron Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Bryce Phillips, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2009, the petitioner was convicted by a Shelby County Criminal Court jury of first degree felony murder, attempted especially aggravated robbery, and aggravated burglary, for which he received an effective sentence of life with the possibility of parole.  This court affirmed the convictions on direct appeal. State v. Devaron Taylor, No. W2009-01252-CCA-R3-CD, 2011 WL 4027147, at *1 (Tenn. Crim. App. Sept. 12, 2011).  The petitioner's convictions stemmed from his participation with a friend, Alvin Gordon, in breaking into the home of an elderly neighbor with the intention of stealing his car and then shooting and killing the victim when he returned home. Id. at *1-3.  The petitioner admitted his participation in the crimes, while at the same time attempting to minimize his involvement,

in both a statement to police and in his trial testimony. Id. at *2-3. Our direct appeal opinion provides the following synopsis of his trial testimony:

[The petitioner] testified that on September 25, 2007, he woke up around 11 or 12:00 and walked to Magnolia, the area in which the victim lived. Alvin Gordon called him and asked, "Do you want to get the old man's car?" [The petitioner] replied that he "didn't care." [The petitioner] walked to Gordon's house, and together they walked to William ("Eddie") Milam's house, but no one answered the door at Milam's house. [The petitioner] and Gordon then walked to the victim's house. [The petitioner] testified that Gordon used a screwdriver to "pop" the window out and used a trash can to step up and go inside through the window. Gordon looked around inside and told [the petitioner] that no one was there, and [the petitioner] went inside. Inside the victim's house, they found a 12-gauge shotgun. [The petitioner] testified that Gordon handed him the shotgun, he handed it back, and Gordon put the shotgun down on the bed beside the window. Gordon also found some 12-gauge shotgun shells, which he also placed on the bed.

[The petitioner] testified that he searched the house, looking for the victim's car keys. [The petitioner] found latex gloves in the bathroom and he put them on so as not to leave fingerprints, and he and Gordon continued to look for the car keys. They did not find any car keys, and [the petitioner] looked through the victim's dresser. He testified that Gordon appeared with duct tape and asked if he wanted to "tie [the victim] up." [The petitioner] told Gordon, "No, we just came to get the keys to the car." [The petitioner] took the duct tape from Gordon and placed it on the dresser. [The petitioner] told him that he thought "things [were] getting out of hand." [The petitioner] took off the gloves and began to leave. Gordon told [the petitioner] to wait, and [the petitioner] went back to the front of the house to wait. Then, they saw the victim returning home. [The petitioner] testified that the victim came to the back of the house where [the petitioner] and Gordon were standing and pulled back the curtain. The victim called Gordon by name, and Gordon pushed [the petitioner] aside, pulled out a gun and shot the victim. [The petitioner] grabbed the shotgun and they both jumped out of the window and ran. As they ran away from the victim's house, [the petitioner] saw Gordon reach down and take something from the victim's pocket. [The petitioner] threw the shotgun into the bushes. They then walked to William Milam's house. [The petitioner] later told Milam to get the shotgun out of the bushes.

[The petitioner] admitted that he went to the victim's house to steal his

-2-

car and that they waited on the victim to arrive home. [The petitioner] and Gordon stole $9.50 in quarters from the victim. [The petitioner] heard the victim gagging as he ran away from the home. [The petitioner] explained how he believed that the latex gloves he was wearing were found lying under the victim's body. He testified that he had taken the gloves off, and the victim took them from him when he was standing at the window before he was shot. On direct examination, [the petitioner] denied knowing in advance that Gordon had a gun with him that day, but he later admitted on cross examination that he did, in fact, know that Gordon possessed a gun.

Id.

On July 18, 2012, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of trial counsel. Post-conviction counsel was appointed and an evidentiary hearing held, at which the petitioner alleged several instances of ineffective assistance of counsel. He confines himself on appeal, however, to alleging that counsel was ineffective for failing to have him undergo a mental health evaluation and for failing to properly advise him on the consequences of waiving his sentencing hearing. We will, therefore, summarize only those portions of the evidentiary hearing testimony that are relevant to those claims.

During his direct examination testimony, the petitioner, who said he was eighteen at the time of his trial and had gone as far as the ninth grade before dropping out of school, primarily complained about the unfairness of the felony murder statute and the fact that Gordon received a plea-bargain sentence of thirteen and a half years, while he was serving a life sentence. He said that he agreed to waive his sentencing hearing on the recommendation of trial counsel, who told him that if he did so, he would receive a deal involving a life sentence with the possibility of parole running concurrently to the sentences for his other offenses. He did not, however, "really . . . know what was going on." On cross-examination, the petitioner testified that he had wanted the opportunity to testify at a sentencing hearing in order to "[s]how [his] remorse to the family and . . . really acknowledge the jury to the disparity . . . of . . . the time that [he] had received in comparison with the time that [Gordon] received."

Trial counsel testified that the State made no plea offers to the petitioner and that he did not learn of Gordon's plea deal until after the petitioner had been convicted. He said he saw no reason to think that the petitioner needed a mental evaluation, testifying that the petitioner was "most cognizant," "very knowledgeable about the facts and what was going on with his case," and one of the "better-communicating clients" he had had. On cross-examination, he testified that he had been practicing law for sixteen or seventeen years and

had handled "much more than ten" murder trials during his career. He stated that having the petitioner waive the sentencing hearing in order to receive the minimum sentence was "very much a tactical strategic move" on his part, and one with which the petitioner agreed after he discussed it with him.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that the petitioner had not met his burden of showing that trial counsel was in any way deficient in his performance or that he was prejudiced as a result of any alleged deficiency. On May 31, 2013, the court entered an order of dismissal in which it incorporated by reference its oral findings of fact and conclusions of law from the evidentiary hearing. Thereafter, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

-4-

Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

On appeal, the petitioner argues that counsel was ineffective for failing to have him undergo a mental health evaluation before trial and for failing to explain to him the purpose and effect of waiving a sentencing hearing. In support, he cites the fact that he was eighteen at the time of trial and had only a ninth grade education, as well as his testimony that he did not understand why counsel recommended that he waive the sentencing hearing.

In denying relief, the post-conviction court found that the petitioner failed to show that trial counsel was in any way deficient in his representation or that the petitioner was prejudiced by any of counsel's actions or inactions. We conclude that the record fully supports the findings and conclusions of the post-conviction court. Trial counsel testified the petitioner was cognizant, communicative, and engaged and that he saw no basis to request a mental evaluation. He further testified that he made a strategic decision to have the petitioner waive the sentencing hearing in order to receive the minimum sentence, that he discussed the issue with the petitioner, and that the petitioner agreed that it would be in his best interest to do so. The petitioner has simply not shown that counsel was in any way deficient in his representation or that he was prejudiced by counsel's alleged deficiencies.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to meet his burden of showing that he was denied the effective assistance of trial counsel. Accordingly, we affirm

the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE